IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,            )
           Respondent/Plaintiff,           )
vs.                                               )               No. 3:00-CR-0389-L (01)
                                               )               No. 3:05-CV-0357-L (BH)
ANDREW RAMSEY, ID # 13431-076,   )               ECF
           Movant/Defendant.            )               Referred to U.S. Magistrate Judge

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Movant, a current inmate in the federal prison system, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to the provisions of 28 U.S.C. § 2255 to challenge his federal conviction and sentence in Cause No. 3:00-CR-0389-L. The respondent is the United States of America (government).

### B. Initial Proceedings

On January 24, 2001, the government charged movant and three others for various offenses in a 103-count superseding indictment. (*See generally* Superseding Indictment, doc. 63.)[1] Movant was charged in 93 of the 103 counts with conspiracy to commit securities fraud; transportation of

---

[1] All document numbers refer to the docket number assigned to the pleading in the underlying criminal action, No. 3:00-CR-0389-L.

money known to be taken by fraud; wire fraud; money laundering; engaging in monetary transactions derived from unlawful activity; and aiding and abetting.  (*See generally id.*)

## C. <u>Plea and Rearraignment</u>

On March 6, 2002, movant entered into an agreement with the government whereby he would plead guilty to Count 3 of the superseding indictment, *i.e.*, transporting money known to be taken by fraud in violation of 18 U.S.C. § 2314, and he signed a factual resume in which he admitted facts sufficient to support his plea to that count.  (*See generally* Plea Agreement, doc. 171; Factual Resume, doc. 172.)

The plea agreement informed movant that the statutory maximum sentence for Count 3 was ten years imprisonment and that "[t]here is no agreement as to what sentence will be imposed."  (*See* Plea Agreement at 1-2.)  As part of the plea agreement, movant waived his right to appeal and to pursue post-conviction relief under 28 U.S.C. § 2255 except for a claim of ineffective assistance of counsel.  (*Id.* at 3.)  The government agreed not to further prosecute movant or his wife (Stephanie Ramsey) for any offense related to his involvement in investment fraud prior to execution of the plea agreement and to file a motion for downward departure pursuant to USSG § 5K1.1 or motion to reduce sentence "[i]f in the sole discretion of the government, [movant] provides substantial assistance in the prosecution of others in this or another case."  (*Id.*)  The agreement stated that movant "freely and voluntarily" pled guilty, and that the plea was "not the result of force or threats or of promises apart from those set forth in this plea agreement."  (*Id.* at 3-4.)

Before accepting the plea, the Court examined movant as to its voluntariness.  (Tr. Re-arraignment at 2-26.)  Movant stated that he was thirty-six years old and had graduated from high school.  (*Id.* at 4.)  After the government read the superseding indictment as it pertained to Count

2

3, movant indicated that he understood the nature of the charges against him.  (*Id.* at 5-12.)

Movant was advised of the essential elements of the offense charged in Count 3 – (1) that movant

transported or caused to be transmitted in interstate commerce money taken by fraud, (2) that at

the time of such transportation movant knew the money had been taken by fraud, and (3) the

aggregate amount of money taken by fraud and transported in interstate commerce was $5,000.00

or more, and he averred that he understood and committed each element.  (*Id.* at 13.)  Movant fur-

ther represented that he was "fully satisfied with the advice and the representation" provided by his

attorney.  (*Id.*)

After waiving a reading of the plea agreement, movant indicated that he understood its

terms.  (*Id.* at 14.)  He specifically stated that he had read and reviewed the agreement with counsel

prior to signing it, and that it represented "in its entirety any understanding that [he had] and all

the agreements [he had] with the Government."  (*Id.* at 15.)  He further advised that no one had

made any other promise or assurance in an effort to obtain his plea, and that no one had threatened

or coerced him to plead guilty.  (*Id.* at 15-16.)  He stated that he was pleading guilty of his own free

will because he was guilty.  (*Id.* at 16.)

Movant further stated that he understood his constitutional rights to a jury trial where he

could confront and cross-examine witnesses, call witnesses in his defense, and testify in his own

defense unless he chose not to do so, and that he was giving up such rights by pleading guilty.  (*Id.*

at 16-17.)  He also stated that he understood that he was giving up his right not to testify against

himself by pleading guilty.  (*Id.* at 17-18.)  After the Court informed him that the maximum punish-

ment for Count 3 was ten years imprisonment and a fine not to exceed $250,000 or twice the gain

to movant or loss to any victim, movant stated that no one had predicted or promised what his

sentence would be.  (*Id.* at 18.)  He understood that the Court alone would determine his sentence.

(*Id.*)  Although he had gone over the sentencing guidelines with his attorney and understood how

the guidelines would apply to his case, he understood that his attorney's estimated potential range

of punishment was not binding on the Court, and that no one could accurately determine the

guideline range until the completion of a presentence report.  (*Id.* at 18-20.)

Movant thereafter pled guilty to Count 3.  (*Id.* at 21.)  After movant waived the reading of

the factual resume, the Court found the plea to be knowing and voluntary.  (*Id.* at 24.)

## D.  Sentencing

On February 18, 2003, movant appeared before the Court for sentencing.  (Sentencing Tr.

at 1.)  The Court concluded that the 1997 version of the sentencing guidelines applied to movant,

(*id.* at 21); based on movant's stipulation that the loss amount for his offense was between five and

ten million dollars, (*see* Sentencing Tr. II[2] at 1), its rulings and the presentence report (PSR), the

Court calculated movant's total offense level at thirty and his criminal history category at one, (*see*

*id.* at 17-19).  It declined to reduce the offense level for acceptance of responsibility, finding that

movant was "not entitled" to such reduction despite his guilty plea.  (*Id.* at 18.)  Consistent with its

calculations, the Court found the applicable sentencing range to be from 97 to 121 months

imprisonment and sentenced movant to 97 months imprisonment.  (*Id.* at 29.)

## E.  Entry of Judgment and Subsequent Appeal

On February 24, 2003, the Court signed a judgment on movant's guilty plea and sentenced

him to ninety-seven months imprisonment.  (*See* Judgment, doc. 302.)  On February 25, 2003,

---

[2]  "Sentencing Tr. II" refers to the second volume of the sentencing transcript.

movant filed a *pro se* appeal wherein he claimed (1) ineffective assistance of counsel; (2) he was sentenced above statutory guidelines; (3) he was not accorded a proper departure for acceptance of responsibility; (4) he was not accorded a proper departure under § 5k1.1 for assisting the government; and (5) his relevant conduct was inappropriately calculated.  (*See* Notice of Appeal, doc. 304.) Trial counsel thereafter successfully moved to withdraw, and the Court appointed a new attorney to represent movant on appeal.  (*See* Orders of Mar. 14 and 27, 2003, docs. 319 and 323.)  On February 18, 2004, the court of appeals noted that movant's appellate attorney had filed an *Anders*[3] brief, and that based on its review of that brief, movant's response thereto, and the record, movant presented "no nonfrivolous issue for appeal."  *See United States v. Ramsey*, No. 03-10230, slip op. at 1 (5th Cir. Feb. 18, 2004).

## F.  Federal Collateral Proceedings

On February 22, 2005, the Court received the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 with an attached memorandum in support.  (*See* Mot. to Vacate at 1; doc. 395.) In the motion, movant claims that he was denied the effective assistance of counsel when his attorney failed to inform him of the consequences of his plea and failed to argue for sentence "reductions he could have received along with the indictment not being properly served to inform [him] of the enhancements he has received."  (*Id.* at 6.)  The Court construes movant's supporting memorandum as raising the following claims:[4]  (1) his sentence violates *Blakely v. Washington*, 542

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

[4] Movant's thirty-five page memorandum in support of his motion does not set out his claims in a clear manner.  The government identified the seven listed claims in its response, and movant does not object to such listing in his reply brief. From its independent review of the supporting memorandum, the Court concurs that movant has raised the listed claims.

5

U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005); (2) the Court unlawfully enhanced his sentence under USSG § 2F1.1(b)(6)(A);[5] (3) the Court unlawfully refused to reduce his offense level for acceptance of responsibility; (4) he was subjected to double jeopardy; (5) the government breached the plea agreement; (6) his indictment was constructively amended; and (7) his attorney rendered ineffective assistance when he failed (a) to apprise him and the Court of stipulations contained in his plea agreement; (b) object to information in the PSR which was contrary to provisions in the plea agreement; (c) object to the application of § 2F1.1(b)(6)(A); and (d) object to double counting that occurred when his sentence was enhanced for role in the offense.

The government argues that movant waived Claims 1 through 6 when he pled guilty. It alternatively argues that (1) Claims 1 through 4 are not cognizable on federal collateral review; (2) Claims 2 and 5 were decided against movant when he raised them on appeal; and (3) Claim 6 is procedurally barred. It argues that Claim 7 has no merit.

Because the government's claimed waiver encompasses six of the seven claims, the Court considers it at the outset.

## II.  WAIVER

The government argues that movant waived the right to raise his first six claims by entering into his plea agreement.

It is well settled that with an informed and voluntary waiver a defendant may waive his statutory right to pursue claims directly on appeal and collaterally through a motion filed pursuant

---

[5] The Court cites the correct provision despite movant's reference to USSG § 2F1.1(b)(7)(A).

to 28 U.S.C. § 2255.[6]  *See, e.g.*, *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006); *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Robinson*, 187 F.3d 516, 517 (5th Cir. 1999); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994); *United States v. Baty*, 980 F.2d 977, 978 (5th Cir. 1992); *United States v. Melancon*, 972 F.2d 566, 567 (1992).  "So long as a plea is informed and voluntary, [the appellate courts] will enforce a waiver of appeal."  *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997).  The courts of appeal may "determine whether the waiver was knowing and voluntary and whether the waiver applies to the circumstances at issue."  *United States v. Hemler*, 169 Fed. App'x 897, 898 (5th Cir.) (per curiam), *cert. denied*, 127 S. Ct. 146 (2006); *accord Bond*, 414 F.3d at 544-45; *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir.), *cert. denied*, 126 S. Ct. 502 (2005).  The district courts, of course, may also determine whether a particular criminal defendant has knowingly and voluntarily waived his or her right to appeal or collaterally attack his conviction or sentence.

Movant claims that he was coerced into pleading guilty and waiving his right to pursue claims in a § 2255 action, that he did not understand the impact of the plea agreement, and that he believed he "would receive 0-6 months" based upon the charge to which he pled guilty.  He also contends that his attorney rendered ineffective assistance by failing to apprise him of stipulations contained within the plea agreement.  He further claims that the government violated the terms of the agreement by not granting him any downward departures promised therein;  it was his under-

---

[6] The terms "knowing" and "informed" are essentially two ways to express the same thought. *See United States v. Bushert*, 997 F.2d 1343, 1350 n.16 (11th Cir. 1993).

standing from the plea agreement that "if he plead guilty and fully cooperate [sic] with the government, and did not commit any more crimes prior to sentencing," (1) the government would file a motion under § 5k1.1 or Rule 35 of the Federal Rules of Criminal Procedure to reduce his sentence; (2) he would receive a three point reduction in his offense level for acceptance of responsibility; and (3) the government would not further prosecute him or his wife "for any offense related to his involvement associated with investment fraud, committed prior to filing of his plea agreement."

In light of movant's allegations, the Court must determine whether he knowingly and voluntarily pled guilty and waived his rights to bring claims pursuant to § 2255. Because the determination involves similar concepts and analysis for both the voluntariness of the plea and of the waiver, the Court considers the issues together.

## A.  Voluntariness of Plea and Waiver

"When a defendant pleads guilty he or she . . . forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *accord Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). For example, with an informed and voluntary waiver, a defendant may waive his right to pursue claims on appeal or in a motion to vacate. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam). Because a plea relinquishes rights of the defendant, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Ordinarily, a waiver is entered knowingly, intelligently, and with sufficient awareness when "the defendant

8

fully understands the nature of the right and how it would likely apply in general in the circumstances – even though the defendant may not know the specific detailed consequences of invoking it." *Id.* at 630. With "respect to a defendant's awareness of relevant circumstances, [the Constitution] does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.* A "key[] to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).

Nevertheless, a plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. The district courts have the responsibility "to insure that the defendant fully understands [his or] her right to appeal and the consequences of waiving that right." *United States*

9

*v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). A waiver of a "right to appeal deserves and, indeed, requires the special attention of the district court." *Id.* As it existed when movant pled guilty in March 2002, Fed. R. Crim. P. 11 required the courts to "inform the defendant of, and determine that the defendant underst[ood] . . . the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence." *See* Fed. R. Crim. P. 11(c)(6) (now re-worded and set forth in Fed. R. Crim. P. 11(b)(1)(N)). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). Despite various changes over the years, Rule 11 continues to provide procedural safeguards for assuring that guilty pleas and accompanying waivers are entered voluntarily and knowingly. Fed. R. Civ. P. 11 (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *Vonn*, 535 U.S. at 62 (recognizing the evolution of the rule over the past three decades).

Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophy-lactic protection for the constitutional rights involved in the entry of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). Compliance would provide similar protection for the statutory rights involved in the entry of the plea. "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Vonn*, 535 U.S. at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require the Court to determine that the defendant has a

perfect understanding of the consequences.  In fact, the Supreme Court "has found that the Consti-tution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."  *Ruiz*, 536 U.S. at 623.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

> When examining the totality of the circumstances, a reviewing court should "con-sider the complexity of the charge, the defendant's level of intelligence, age and edu-cation, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted).  Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."  *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine."  *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

11

In addition, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Prisoners must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

With these principles in mind, the Court examines the voluntariness of movant's plea and accompanying waivers in light of his allegations of coercion, unfulfilled promises, and ineffective assistance of counsel.

### 1. *Coercion*

Movant indicates that his attorney coerced him to plead guilty and waive his right to raise claims in this collateral proceeding.  Movant, however, specifically stated at his plea hearing that his plea was not the result of any coercion or threat.  He provides nothing to overcome the strong presumption of verity accorded his solemn declarations made in open court.

In addition, the plea agreement entered into by movant also specifically states that the agreement "was not the result of force or threats or of promises apart from those set forth in this plea agreement."  Movant has not overcome the presumption of regularity and "great weight" accorded to this court record.

Because movant provides no legitimate basis for finding that he was coerced into pleading guilty or waiving his right to raise claims in this collateral proceeding, the assertion of coercion is insufficient to render the plea or accompanying waivers involuntary.

### 2. Unfulfilled Promises

Movant also claims that the government breached his plea agreement by not granting downward departures promised in the agreement.  More specifically, he contends that (1) the government filed no motion under § 5k1.1 or Rule 35 to reduce his sentence; (2) he received no reduction in his offense level for acceptance of responsibility; and (3) the government further prosecuted him in violation of the plea agreement by objecting to a reduction for acceptance of responsibility.

A plea may be rendered involuntary due to an unfulfilled promise.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262 (1971).

In this instance, the Court finds no governmental breach of any promise contained within the plea agreement.  With respect to the fact that movant received no reduction in his offense level for acceptance of responsibility, the plea agreement simply contains no promise of such reduction.  That movant did not receive such reduction thus constitutes no breach of any promise.

With respect to the related contention that the government breached its agreement not to further prosecute him when it opposed a sentence reduction for acceptance of responsibility, the Court likewise finds no breach.  The plea agreement contains a governmental promise not to further prosecute movant or his wife for any offense related to his involvement in investment fraud

13

committed prior to the plea agreement.  (*See* Plea Agreement at 3.)  However, opposing a reduction of sentence for acceptance of responsibility – even if the denial of such reduction is based upon alleged criminal conduct – does not equate to prosecuting movant for any crime.  The plea agreement does not preclude the application of enhancements or require the granting of a sentence reduction for acceptance of responsibility.  Consequently, this contention provides no basis for rendering movant's plea or accompanying waivers involuntary.

With respect to the plea provision relating to the filing of a Rule 35 or § 5k1.1 motion, the plea agreement clearly reflects that the government's obligation to file such a motion is contingent upon its determination that movant has provided "substantial assistance in the prosecution of others in this or another case."  (Plea Agreement at 3.)  The government stated at sentencing that it had filed no motion for downward departure because movant had not provided the required substantial assistance.  (Tr. Sentencing II at 23.)  The failure to file a Rule 35 or § 5k1.1 motion constitutes no breach of the plea agreement, and thus provides no basis for rendering movant's plea or accompanying waivers involuntary

For all of these reasons, the Court finds no unfulfilled promise that renders movant's plea and accompanying waivers involuntary.  Movant, furthermore, provides no legitimate basis for his alleged understanding regarding his entitlement to an acceptance-of-responsibility reduction in offense level or the government's obligations relative to filing a motion for sentence reduction and not prosecuting him.  His stated understanding of those matters simply have no support in the record.  The Court thus proceeds to his claim that ineffective assistance of counsel rendered the plea or waivers involuntary.

### 3. *Ineffective Assistance of Counsel*

Movant argues that his plea and accompanying waivers are rendered involuntary due to ineffective assistance of counsel.  Although he asserts four specific claims of ineffective assistance of counsel, only one arguably affects the voluntariness of his plea or accompanying waivers – his claim that his attorney failed to apprise him of stipulations contained within the plea agreement.[7] With respect to that claim, movant alleges that his attorney failed to make him aware of the consequences of his plea relative to the loss amount that would be attributed to him and where that amount would place him on the guidelines.  He asserts that when he signed the plea agreement, he did not know that he would receive a harsh ninety-seven month sentence.  He also claims that he believed his sentence would be limited to six months imprisonment.

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)).  However, "an erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981).  An attorney's "good faith but erroneous prediction of a sentence . . . does not render the guilty plea involuntary." *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975), *accord United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary").  As noted in *Daniel v. Cockrell*, 283 F.3d 697 (5th Cir. 2002),

> [a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence.  In other words, if the defendant's

---

[7]  The claim also contains an allegation that counsel failed to apprise the Court of stipulations contained within the plea agreement.  Such allegation does not impact the voluntariness of his plea or accompanying waivers.

expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands.  Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

283 F.3d at 703.[8]

To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  "[I]n a guilty plea scenario, a [prisoner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error."  *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected

---

[8]  The Court does not cite *Daniels* for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred.  *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

the outcome of the plea process." *Hill*, 474 U.S. at 58.  To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*  Even when an attorney erroneously estimates his client's potential sentence, the defendant must satisfy this requirement. *Stumpf*, 827 F.2d at 1030.  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

Movant's claim that his attorney rendered ineffective assistance by failing to apprise him of stipulations contained within the plea agreement is directly belied by the court record.  The record shows affirmative statements by movant that prior to signing the agreement, he had read it and discussed it with his attorney.  (*See* Tr. Rearraignment at 15.)  Such statements show that he knew the contents of the plea agreement.  Movant has presented nothing to overcome the presumption of verity accorded his solemn declarations made in open court.  The record does not support finding that counsel performed deficiently regarding apprising movant of stipulations within the plea agreement.

Movant provides no support for his claim that his attorney failed to make him aware of the consequences of his plea when his attorney failed to explain the loss amount that he would be responsible for under the sentencing guidelines.  Such claim appears contrary to his specific statement at rearraignment that he had gone over the sentencing guidelines with his attorney and understood how the guidelines would apply to his case.  (*See id.* at 18-19.)  He has provided nothing to overcome the presumption of verity accorded to that statement.

Furthermore, even assuming a deficiency of counsel in this regard, the claim fails because movant has shown no reasonable probability that he would have insisted on pleading not guilty and proceeded to trial had his attorney provided the explanation. The Court fully explained the consequences of the plea to movant. Movant knew the maximum sentence for Count 3 was ten years imprisonment. He also knew that no one could predict the ultimate range of punishment in the absence of a presentence report. The government sought to calculate movant's sentence based upon more than $10,000,000 in losses. At sentencing, movant stipulated that the loss amount was between five and ten million dollars. The amount of losses attributed to him should not have come as a surprise, and certainly created no reasonable probability that he would have insisted on proceeding to trial on the ninety-three counts against him.

Movant's claim that he believed his sentence would be no more than six months is likewise unsupported by the record. At the plea hearing, movant specifically stated that, other than what is found in the plea agreement, no one had made any promise or assurance in an effort to obtain his plea. (*Id.* at 15.) He stated that no one had predicted or promised what his sentence would be. (*Id.* at 18.) He understood that the Court would determine his sentence after the completion of a presentence report and that any estimate of a sentence by his attorney was not binding on the Court. (*Id.* at 18-20.) The record shows no six-month estimate by counsel. Movant provides nothing to support a claim that his attorney in fact provided such an estimate. Conclusory allegations of ineffective assistance of counsel are insufficient to obtain relief under § 2255.

Even if the Court assumes for purposes of this § 2255 action that counsel rendered deficient representation by estimating a maximum sentence of six months, deficient representation standing alone is insufficient to obtain relief on an ineffective-assistance-of-counsel claim. *Strickland* requires

both a deficiency of counsel and resulting prejudice.  In this case, the alleged erroneous estimation does not amount to ineffective assistance of counsel in light of movant's affirmative statements at rearraignment and the specific admonitions of the Court to him.  Movant has shown no reasonable probability that he would have insisted on proceeding to trial in the absence of the estimation of his sentence by counsel.  The Court thoroughly discussed the plea agreement with movant.  Movant was specifically advised that the count to which he was pleading guilty carried a ten-year maximum sentence.  Movant stated that he understood the available range of punishment.  Movant, furthermore, stated that he understood the charge against him and stipulated to the truth and correctness of all the facts contained in the factual resume he signed.  He specifically stated that no one made him any promises not contained within the plea agreement.  Despite all of these specific admonitions from the Court, movant persisted with his guilty plea.

Regardless of what his attorney informed him prior to his plea, movant was advised through both the plea agreement and the plea colloquy that the statutory maximum sentence for the charged offense was ten years imprisonment.  That movant "neither refused to enter his plea nor voiced any objection when confronted with this information precludes him from arguing that he pled guilty in reliance upon some alternative characterization of his exposure given to him by his counsel." *United States v. Bjorkman*, 270 F.3d 482, 503 (7th Cir. 2001).  Given that movant knew that the Court was charged with sentencing him within the statutory range of punishment up to ten years imprisonment, that the plea agreement contained no promise of a sentence within a specific range of punishment, and that he swore in open court that there were no promises outside the plea agreement, he has not shown a reasonable probability that but for the alleged estimated sentence from counsel, he would

19

not have pleaded guilty and would have insisted on going to trial. *See United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987).

For the foregoing reasons, the Court finds no ineffective assistance of counsel that rendered movant's plea or accompanying waivers involuntary.

## B. Effect of Voluntary Plea and Waiver

Because movant voluntarily pled guilty and waived his right to appeal and raise claims in this § 2255 action as set forth in his plea agreement, movant is precluded from pursuing claims in this action except for those claims that he specifically reserved for purposes of appeal and collateral attacks. *See United States v. McKinney*, 406 F.3d 744, 746 & n.2 (5th Cir. 2005) (holding that "[a] defendant may waive his statutory right to appeal if the waiver is knowing and voluntary"); *United States v. Baymon*, 312 F.3d 725, 729 (5th Cir. 2002) (same); *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam); *United States v. Melancon*, 972 F.2d 566, 567-68 (5th Cir. 1992).  Furthermore, once a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, all non-jurisdictional defects in the proceedings below are waived except for claims of ineffective assistance of counsel relating to the voluntariness of the plea.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In this instance, movant only reserved the right to raise claims of ineffective assistance of counsel in this collateral proceeding filed pursuant to 28 U.S.C. § 2255. (*See* Plea Agreement at 3.) Claims 1 through 6 do not fall within the reserved category. Consequently, his informed and voluntary waiver precludes movant from pursing those claims. In light of movant's voluntary plea and waiver, he may only pursue his claims of ineffective assistance of counsel. Claims 1 through 6 do not entitle him to relief under 28 U.S.C. § 2255. The Court proceeds to movant's claims that survived his voluntary plea and accompanying waivers.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant raises four specific claims of ineffective assistance of counsel. He asserts that his attorney rendered ineffective assistance when he failed (1) to apprise the Court of the stipulations contained in his plea agreement;[9] (2) object to information in the presentence report which was contrary to provisions in the plea agreement; (3) object to the application of § 2F1.1(b)(6)(A); and (4) object to double counting that occurred when his sentence was enhanced for his role in the offense.

As previously noted, to successfully state a claim of ineffective assistance of counsel at sentencing, movant must demonstrate (1) deficient attorney performance and (2) that the deficient performance resulted in prejudice to him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of ineffective assistance of counsel at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney. *Glover v. United States*, 531 U.S. 198, 200-04 (2001). In other words, the movant must show that

---

[9] Movant also claims that his attorney failed to apprise him of stipulations contained in his plea agreement. Because the Court has already addressed that claim in the context of determining whether movant voluntarily pled guilty and waived his right to raise claims in this action, the Court will not revisit the claim.

counsel's deficiencies created a reasonable probability that his sentence would have been less harsh. *See id.* at 200.

With respect to the alleged failures of counsel to apprise the Court of the stipulations contained in movant's plea agreement and to object to information in the presentence report which was contrary to provisions in the plea agreement, movant fails to identify the stipulations or the information within the presentence report to which he is referring. Conclusory allegations are insufficient to succeed on claims of ineffective assistance of counsel. Movant, moreover, has shown no reasonable probability that his sentence would have been less harsh in the absence of the alleged deficiencies. These claims entitle movant to no relief under § 2255.

With respect to the alleged failure to object to the application of § 2F1.1(b)(6)(A), the District Court applied that provision over an objection by counsel. (*See* Sentencing Tr. at 8, 18-19.) Because the District Court clearly understood movant's opposition to the application of § 2F1.1(b)(6)(A), further objection would have been futile. The Court finds no deficiency of counsel related to the alleged failure to object to the application of § 2F1.1(b)(6)(A). The alleged failure, moreover, did not prejudice movant.

With respect to the alleged failure of counsel to object to double counting that allegedly occurred when his sentence was enhanced based upon his role in the offense, the Court finds that counsel in fact objected to perceived double counting at sentencing. (*See* Sentencing Tr. at 20, 23; Sentencing Tr. II at 12.) The Court overruled the objections. (*See* Sentencing Tr. at 25; Sentencing Tr. II at 14.) The Court finds no deficiency of counsel related to the alleged failure to object to double counting.

For the foregoing reasons, movant has stated no claim of ineffective assistance of counsel that entitles him to relief in this action.

## IV.  EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case.  The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary.  In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED** this 26th day of July, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE